NO. 24-4333

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

SWINOMISH INDIAN TRIBAL COMMUNITY,
A FEDERALLY RECOGNIZED TRIBE,

*Plaintiff-Appellee*,

v.

BNSF RAILWAY COMPANY, A DELAWARE CORPORATION,

*Defendant-Appellant*.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

No. 2:15-cv-00543-RSL
Before The Honorable Robert S. Lasnik
United States District Court Judge

## AMICUS CURIAE BRIEF OF THE STATE OF WASHINGTON
## IN SUPPORT OF SWINOMISH INDIAN TRIBAL COMMUNITY
## AND AFFIRMANCE OF DISTRICT COURT DECISION

NICHOLAS W. BROWN
  *Attorney General*

NIYA S. TAWACHI, WSBA #60350          1125 Washington Street SE
  *Assistant Attorney General*        P.O. Box 40100
PETER B. GONICK, WSBA #25616          Olympia, WA 98504-0100
  *Deputy Solicitor General*          360-753-6200
Washington Attorney General's Office

*Counsel for Amicus Curiae,*
*State of Washington*

# TABLE OF CONTENTS

I.     IDENTITY AND INTEREST OF AMICUS CURIAE ..................... 1

II.    BACKGROUND ......................................................... 2

III.   ARGUMENT ........................................................... 4

    A.  Washington Has an Interest in Ensuring that Disgorgement
        Remains an Effective Remedy that Prevents Wrongdoers from
        Retaining Ill-gotten Gains and Removes Incentives for Future
        Trespass ............................................................ 4

    B.  The District Court Correctly Calculated Disgorgement to
        Include Only Those Profits Obtained as a Result of BNSF's
        Trespass ............................................................ 6

    C.  BNSF's Proposed Remedies Are Inconsistent with the
        Objectives of Disgorgement ...................................... 9

    D.  Washington Has an Interest in Guarding Against Willful
        Trespass ............................................................ 12

IV.    CONCLUSION ......................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Holmquist v. King Cnty.*,
   192 Wn. App. 551, 368 P.3d 234 (2016) ...................................................... 4

*Washington v. Nat'l Maint. Contractors, LLC*,
   No. 2:21-cv-638-BJR, 2021 WL 3886833 (W.D. Wash. Aug. 31, 2021) ...... 6

## Statutes

Wash. Rev. Code § 19.86 (Washington Consumer Protection Act) .................. 5

## Other Authorities

BNSF, *BNSF Railway In Washington*,
   https://bnsfnorthwest.com/washington/ (last visited Mar. 7, 2025)........ 12, 13

Restatement (Second) of Torts: *Liability for Intentional Intrusions on
   Land* § 158 (Am. L. Inst. 1965)........................................................................ 4

Restatement (Third) of Restitution and Unjust Enrichment: *Restitution
   and Unjust Enrichment* § 1 (Am. L. Inst. 2011) .......................................... 13

Restatement (Third) of Restitution and Unjust Enrichment: *Wrongful Gain*
   § 3 (Am. L. Inst. 2011)............................................................................. passim

Restatement (Third) of Restitution and Unjust Enrichment: *Trespass,
   Conversion, and Comparable Wrongs* § 40 (Am. L. Inst. 2011)........... passim

Restatement (Third) of Restitution and Unjust Enrichment: *Enrichment by
   Misconduct; Disgorgement; Accounting* § 51 (Am. L. Inst. 2011) ....... passim

Restatement (Third) of Restitution and Unjust Enrichment: *Enrichment by
   Misconduct; Disgorgement; Accounting* § 51(4) (Am. L. Inst. 2011)...... 6, 13

Restatement (Third) of Restitution and Unjust Enrichment: *Enrichment by
   Misconduct; Disgorgement; Accounting* § 51(5) (Am. L. Inst. 2011)...... 5, 10

Substitute S.B. 5310, 53rd Leg., Reg. Sess. (Wash. 1993)
  Final Bill Report ................................................................. 15

Washington State Department of Natural Resources,
  *About the Washington Department of Natural Resources*,
  https://www.dnr.wa.gov/about-washington-department-natural-
  resources#:~:text=Our%20mission%3A%20Manage%2C%20sustain%2
  C,of%20present%20and%20future%20generations
  (last visited Mar. 7, 2025) ........................................................ 14

## I. IDENTITY AND INTEREST OF AMICUS CURIAE

The State of Washington has an interest in the fair development and application of the doctrine of disgorgement. Disgorgement is an equitable remedy that strips a wrongdoer of any ill-gotten gains and eliminates future incentives for wrongdoing. In the trespass context, disgorgement protects a property owner's right to exclude by removing any incentive to bypass the bargaining process. The State has a paramount duty to protect its citizens and their property rights. That protection is only possible where the incentive to negotiate access is more profitable than trespass. Accordingly, disgorgement must strip trespassers of profits attributable to the trespass.

Moreover, in ignoring the Swinomish Indian Tribal Community's (Tribe) treaty-recognized, property right to exclude, BNSF Railway Company (BNSF) perpetuates a pattern of disregard for the sovereignty of Native people. As a fellow sovereign, Washington is concerned by BNSF's trespass and its attempts to retain its ill-gotten gains. If disgorgement can be applied to allow corporations to ignore their land use agreements with the Tribe and profit, then it can also be applied to land use agreements with states and local governments. This result is wholly inconsistent with the goals of disgorgement.

## II.    BACKGROUND[1]

For more than three decades, BNSF conducted rail operations over the Tribe's land pursuant to a Right-of-Way Easement Agreement (Agreement). 3-ER-293. The Agreement establishes clear limits concerning the number and frequency of trains permitted across the Tribe's land. 3-ER-293. Ignoring the Agreement, BNSF shipped crude oil more than the agreed limits across the Tribe's land without notice or consent. 3-ER-293. In 2015, the Tribe sued alleging that BNSF breached the Agreement and was trespassing on the Tribe's land. 3-ER-292. The district court found that (1) BNSF breached the Agreement, (2) BNSF's trespass was willful, conscious, and knowing, and (3) the "Tribe is entitled to equitable remedies, including the recovery from BNSF of profits made by the unlawful entry." 3-ER-306.

Following a bench trial, the district court imposed disgorgement against BNSF. 1-ER-20. Relying on the Restatement (Third) of Restitution, the district court recognized that even against a conscious wrongdoer, "'restitution may be limited to avoid a liability for gains that are unduly remote . . . or disproportionate to the loss on which liability is based.'" 1-ER-4. Accordingly,

---

[1] The State relies on the facts as set out in the district court's Memoranda of Decision filed on March 27, 2023, and June 6, 2024.

the district court's task required that it "establish BNSF's liability based on the circumstances of the wrong, seeking both to protect the Tribe's interests and to deter future trespass, all without resort to an arbitrary penalty." 1-ER-4.

The district court began its analysis by calculating the total net profits attributable to the wrongdoing. 1-ER-5. In doing so, the district court provided a deduction for certain long-term, fixed costs. 1-ER-8. The district court explained that such a deduction was "equitable, fair, and appropriate to ensure disgorgement without penalty." 1-ER-8.

Next, the district court engaged in an apportionment analysis. 1-ER-9. Because the Tribe had a colorable claim to all net profits obtained from the trespass, the district court shifted the burden to BNSF to demonstrate that "some portion of the net profits earned . . . arose from its legitimate activities and would have been realized even in the absence of the wrongful trespass." 1-ER-9. As a result of that analysis, the district court reduced BNSF's net profits from the trespass to "reflect the amount BNSF could have legitimately earned from the use of its rail lines had it utilized the non-trespassing alternative . . . ." 1-ER-16.

Lastly, the district court determined BNSF's supplemental enhancement. 1-ER-18. The district court found "that, in the interests of justice and equity, supplemental enhancement in an amount that approximate[d] the money market

3

return [wa]s appropriate here." 1-ER-20. The court ordered BNSF to disgorge nearly $400 million and this appeal followed. 1-ER-20.

## III. ARGUMENT

### A. Washington Has an Interest in Ensuring that Disgorgement Remains an Effective Remedy that Prevents Wrongdoers from Retaining Ill-gotten Gains and Removes Incentives for Future Trespass

Washington has an interest in protecting its citizenry from willful trespass. Part of that protection requires ensuring that disgorgement remains an effective remedy for compensating injured parties.

Washington has long recognized the importance of protecting and enforcing property rights. Central among these rights is the right to exclude. "Respecting the paramount right to exclude others, Washington courts compensate the loss of exclusive possession under a variety of legal theories." *Holmquist v. King Cnty.*, 192 Wn. App. 551, 562, 368 P.3d 234 (2016). The law of trespass is one such theory. *See* Restatement (Second) of Torts: *Liability for Intentional Intrusions on Land* § 158 (Am. L. Inst. 1965) (recognizing that an "intrusion" on land "denote[s] the fact that the possessor's interest in the exclusive possession of his land has been invaded . . . without the possessor's consent").

When correctly applied, disgorgement can be an effective remedy. As an equitable remedy, disgorgement is a flexible doctrine that allows courts to exercise their discretion in accordance with reason and fairness. *See* Restatement (Third) of Restitution and Unjust Enrichment: *Enrichment by Misconduct; Disgorgement; Accounting* § 51(5) cmt. f (Am. L. Inst. 2011). As a form of restitution, disgorgement seeks to (1) prevent a wrongdoer from profiting from their wrong while (2) removing incentives for future wrongdoing. Restatement (Third) of Restitution: *Wrongful Gain* § 3; § 51. Disgorgement is only a meaningful remedy to the extent that it effectuates these goals.

Washington is experienced in obtaining disgorgement in the consumer protection context. Serving in its parens patriae role, the State often seeks disgorgement as a remedy for Consumer Protection Act violations. Although the analysis is different under state consumer protection law, the underlying policy concerns are largely the same: stop wrongful behavior, recover funds for victims, and recover unlawful profits from wrongdoers as a means of deterrence. As a result of that experience, the State recognizes disgorgement as an important remedy and its utility in the trespass context.

It is important to the State that its citizens have a means of protecting their "right to insist that any use of property by another . . . be made with the owner's

consent and on the owner's terms." Restatement (Third) of Restitution § 3 cmt. b. Where property owners have a reliable means of enforcing their rights, they can invest in their property knowing they will receive the benefit of that investment. Moreover, where there is an effective mechanism for enforcing property rights, property owners can freely bargain, setting the price and terms for use of their property. Disgorgement protects property owners from forced transactions by removing any incentive to circumvent market transactions. Ensuring the viability of disgorgement as a remedy squarely aligns with the State's recognized interest in promoting the economic welfare of its citizens and protecting its marketplace. *See Washington v. Nat'l Maint. Contractors, LLC*, No. 2:21-cv-638-BJR, 2021 WL 3886833, at *3 (W.D. Wash. Aug. 31, 2021).

**B.     The District Court Correctly Calculated Disgorgement to Include Only Those Profits Obtained as a Result of BNSF's Trespass**

The district court correctly applied the disgorgement doctrine to strip BNSF of its ill-gotten gains "while avoiding, so far as possible, the imposition of a penalty." Restatement (Third) of Restitution § 51(4).

Disgorgement requires that a conscious wrongdoer disgorge "the net profit attributable to the underlying wrong." Restatement (Third) of Restitution § 51(4). Determining whether certain amounts of a defendant's profits are appropriately attributable to the underlying wrong is frequently a multifaceted

inquiry. Restatement (Third) of Restitution § 51 cmt. e. Because disgorgement is a flexible doctrine, "the question of what is properly attributable tends to escape specification by objective rules." Restatement (Third) of Restitution § 51 cmt. e. Instead, the answers to questions of attribution "will be visibly influenced by the court's view of the broader context in which the question is presented—including the defendant's degree of culpability, the importance of the claimant's protected interest, and the remedial alternatives available as a practical matter." *See* Restatement (Third) of Restitution § 51 cmt. e.

Although not subject to precision, the attribution inquiry can be helpfully divided into "four principal aspects:" apportionment, deductions and credits, proof, and causation and remoteness. Pertinently, the "[c]haracterization of profit as 'remote' implies that the causal connection with wrongdoing is unduly attenuated." Restatement (Third) of Restitution § 51 cmt. f. However, "neither the presence nor the absence of a causal link . . . will be conclusive in all cases on the ultimate issue of unjust enrichment." Restatement (Third) of Restitution § 51 cmt. f. In some circumstances, attribution may also depend on "an implicit judgment that the claimant, rather than the wrongdoer, should" retain the benefit of the wrongdoing. Restatement (Third) of Restitution § 51 cmt. f (providing an example of such circumstances). In other instances, as BNSF argues here, "an

objection that profits are 'remote' may mean simply that they are . . . the product of legitimate contributions by the defendant that should not, in justice, be awarded to the claimant; or that liability for the profits so designated would be unacceptably punitive . . . ." Restatement (Third) of Restitution § 51 cmt. f. In all circumstances, the court retains discretion to determine what profits are unduly remote. *See* Restatement (Third) of Restitution § 51 cmt. f. (stating that a court's decision "depends finally on its assessment of [various factors] affecting not only justice between the parties but the incentives to be created for others").

Here, the district court properly exercised its discretion and disgorged only those profits that were attributable to BNSF's trespass. In determining the total net profits attributable to the trespass, the district court considered only those revenues and costs associated with the trespass. The court considered, in part, (1) the number of trespassing cars, (2) the revenues generated by those cars, and (3) the costs attributable to those cars. In doing so, the district court limited its net profit calculation to only those profits that would not have been obtained if not for BNSF's trespass.

Furthermore, the district court reduced the total net profit available to be disgorged to avoid imposing a penalty and to account for BNSF's legitimate

contributions. First, the district court provided a deduction for one-third of BNSF's long-term, fixed costs. 1-ER-8. The district court explained that such a deduction was "equitable, fair, and appropriate to ensure disgorgement without penalty." 1-ER-8. Second, after determining that the Tribe had "a colorable claim to all of the net profits" obtained through the trespass, the district court shifted the burden to BNSF to demonstrate that some of it profits were attributable to its legitimate activities. 1-ER-9. The district court found that BNSF, in large part, failed to meet its burden, but did reduce BNSF's profits by the amount it could have realized if it had used an alternative, non-trespassing route. 1-ER-9-11, 1-ER-16, 1-ER-18. (explaining that BNSF failed to establish that a portion of the net profits arose from BNSF's legitimate activities).

"Disgorgement of wrongful gain is not a punitive remedy." Restatement (Third) of Restitution § 51 cmt. k. Because the district court properly exercised its discretion and disgorged only those profits that were attributable to BNSF's trespass, disgorgement was not punitive nor remote.

## C. BNSF's Proposed Remedies Are Inconsistent with the Objectives of Disgorgement

BNSF's proposed allocation schemes would allow it to retain ill-gotten gains and would not remove incentives for future trespass. "[S]o far as possible," disgorgement is not intended to serve as a penalty. Nevertheless, the Restatement

expressly provides for recovery more than any loss to the claimant to guard against calculating wrongdoers. Restatement (Third) of Restitution § 51 cmt. a.

Courts exercise significant discretion in calculating net profit. A court may apply various tests, make apportionments, assign evidentiary burdens, and provide for credits and deductions. Restatement (Third) of Restitution § 51(5). These discretionary determinations are dictated by "reason and fairness." Restatement (Third) of Restitution § 51(5) In certain circumstances, such dictates may result in disgorgement "that is profitable to the claimant . . . ." Restatement (Third) of Restitution § 3 cmt. c. Requiring full disgorgement from wrongdoers is appropriate "because any lesser liability would provide an inadequate incentive to lawful behavior." Restatement (Third) of Restitution § 3 cmt. c. In the trespass context, any lesser liability would enable a form of "private eminent domain" in favor of the trespasser. Restatement (Third) of Restitution § 3 cmt. c.

BNSF proposed three allocation schemes: (1) "a pro-rata distance-based allocation, distributing profits equally among each mile in the route," (2) an "Average Total Cost" methodology that allocates revenue to separate segments along the route, and (3) a 100-mile block approach that assumed the Tribe's land

contributed equally to BNSF's profits as any other 100-mile block. Opening Br. at 19, 47. Each of these schemes fail.

First, these schemes do not prevent BNSF from profiting, and profiting handsomely, from its trespass. Under BNSF's proposals, it would retain between 94.1% and 99.9% of the profits obtained through its trespass. Such retention renders the disgorgement doctrine and its purpose in preventing incentives for willful trespass useless. If BNSF can calculate that its trespass will result in profits exceeding any provable damages, BNSF is incentivized to continue trespassing. *See* Restatement (Third) of Restitution § 3 cmt. c. Under BNSF's proposals, trespass becomes more profitable than engaging in negotiations with the Tribe. Restatement (Third) of Restitution § 3 cmt. c.

Furthermore, to the extent that BNSF's proposals suggest that disgorgement should be based on the rental value of the Tribe's land, this suggestion is also lacking. Opening Br. at 19, 51. First, "[e]nrichment resulting from intentional trespass is not properly measured by ordinary rental value." Restatement (Third) of Restitution: *Trespass, Conversion, and Comparable Wrongs* § 40 cmt. b. If restitution were so limited, "the calculating wrongdoer would have no incentive to bargain." Restatement (Third) of Restitution § 40 cmt. b. To be sure, courts may not award profits that are unduly remote from the

willful trespass, Restatement (Third) of Restitution § 40, but the district court here acknowledged and applied this principle. 1-ER-4. Second, comments to the Restatement strongly suggest that the utility of market value in determining liability is limited to establishing the minimum value of unjust enrichment. Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. d (explaining that "[s]o long as benefits wrongfully obtained have an ascertainable market value, that value is the *minimum measure* of the wrongdoing defendant's unjust enrichment, even if the transaction produces no ascertainable injury to the claimant and no ascertainable benefit to the defendant") (emphasis added). Even if the district court used the land's market value in determining disgorgement, such use would only establish a floor for liability.

### D. Washington Has an Interest in Guarding Against Willful Trespass

As a fellow sovereign, Washington, like the Tribe, has an acute interest in ensuring that tortfeasors, like BNSF, do not have an incentive to willfully trespass.

BNSF maintains significant operations in Washington State. BNSF owns and operates over 1,300 route miles and maintains 3,245 employees throughout the state, resulting in a payroll of almost $300 million. BNSF, *BNSF Railway In Washington*, https://bnsfnorthwest.com/washington/ (last visited Mar. 7, 2025).

Over one million carloadings take place in Washington with the state serving as the terminal for nearly one million train carloadings. *Id.* Considering BNSF's extensive operations, the State is deeply concerned by BNSF's proposed method of disgorgement. BNSF's arguments are in direct conflict with the Restatement and the doctrine's objectives.

First, BNSF's suggestion that disgorgement be proportionate to a victim's harm is in direct conflict with the Restatement and the objectives of disgorgement. A disgorgement analysis does not turn on harm. The law of restitution explicitly provides for recovery where a property owner has not suffered a demonstrable or "quantifiable injury from the defendant's unlawful interference." Restatement (Third) of Restitution: *Restitution and Unjust Enrichment* § 1 cmt. a; § 3 cmt. b; *see* § 1 cmt. d (explaining, instead, that the law of torts measures liability by the extent of the harm). As a form of restitution, disgorgement focuses on eliminating profit from wrongdoing. Restatement (Third) of Restitution § 51(4). In the trespass context, disgorgement is an appropriate remedy where there is no harm to the real property. This is because "what the defendant has 'taken' from the claimant is an unauthorized use of property from which the claimant had a right to exclude him." Restatement (Third) of Restitution § 40 cmt. c.

Second, BNSF's argument that disgorgement should be limited to the land's rental value is wholly inappropriate and insufficient. Where a defendant "intentionally bypasse[s] an existing market—consciously taking without asking, or proceeding in the face of the owner's refusal," ordinary rental values are an insufficient measure of unjust enrichment. Restatement (Third) of Restitution § 40 cmt. b. Such a measure, under these circumstances, would undermine disgorgement's deterrent effect. Restatement (Third) of Restitution § 40 cmt. b. (explaining that such a measure would place the wrongdoer on a parity with someone who respected the property owner's rights).

The State, like the Tribe, has a significant interest in deterring future wrongdoing on its property. Unlike private property, state lands must be managed to further public purposes including public safety, sustainable and productive land use, and economic prosperity. *See* Washington State Department of Natural Resources, *About the Washington Department of Natural Resources*, https://www.dnr.wa.gov/about-washington-department-natural-resources#:~:text=Our%20mission%3A%20Manage%2C%20sustain%2C,of%20present%20and%20future%20generations (last visited Mar. 7, 2025) (setting out Washington's Department of Natural Resources' (DNR) mission to manage state "lands and waters to meet the needs of present and future generations").

Washington's DNR oversees nearly six million acres of forest, agricultural, aquatic, range, and commercial lands. The proper management of these lands generates over $200 million for public schools, county services, and state institutions. Trespass on these lands directly undermines the State's ability to manage its land in furtherance of the public's interests.

Moreover, trespassory use of state lands circumvents lease negotiations and undermines the State's interest in sustaining the health and productivity of its natural spaces. Washington has a history of protecting its natural resources from trespassers. For example, in the 1990s, Washington's Legislature recognized that "[t]he incidence of property trespass, natural resource damage and the problem of theft of valuable resources from public lands ha[d] increased . . . ." Substitute S.B. 5310, 53rd Leg., Reg. Sess. (Wash. 1993) Final Bill Report at 1. The State enacted trespass laws in response. To the extent BNSF's proposed allocation schemes focus on rental values, such schemes fail to account for a sovereign's interest in furthering the wellbeing of its citizenry through proper land management.

Sovereigns like Washington and the Tribe should be able to rely on the laws against trespass to protect its interests from willful trespassers, and to rely

on remedies like disgorgement to disincentivize willful trespassers. BNSF's proposed forms of disgorgement are inadequate to provide such protection.

## IV.   CONCLUSION

BNSF directly profited from its willful trespass and now seeks to retain most of its ill-gotten profits by urging this Court to adopt insufficient disgorgement methodologies. This Court should affirm the district court and hold that the disgorged profits are not unduly remote nor punitive.

RESPECTFULLY SUBMITTED this 14th day of March, 2025.

NICHOLAS W. BROWN
  *Attorney General*

*s/ Niya S. Tawachi*
NIYA S. TAWACHI, WSBA 60350
  *Assistant Attorney General*

*s/ Peter B. Gonick*
PETER B. GONICK, WSBA 25616
  *Deputy Solicitor General*

1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200
Peter.Gonick@atg.wa.gov

*Counsel for Amicus Curiae,*
*State of Washington*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

## 9th Cir. Case Number(s)

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated           .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**                                            **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                  *Rev. 12/01/22*